**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**ALISHA D. COBBS**                                                           **PLAINTIFF**

**v.**                              **NO. 4:05-CV-488 GTE**

**GRAPAT EMPLOYERS, INC.**                              **DEFENDANT**

## **ORDER**

Presently before the Court is the Defendant's Motion for Summary Judgment. The Court will grant summary judgment in favor of Defendant Grapat Employers Inc.

**I. Background**

Defendant Grapat Employers, Inc. supervises new construction apartment communities, and in 2004, managed Capitol Hill Apartment Homes in Little Rock, Arkansas. During this time, Defendant Plaintiff Alisha Cobbs applied for the Assistant Manager position with Defendant. Area Vice President Susie Cundieff and Property Manager Debbi Hefner interviewed Plaintiff and recommended to Ronald Bruce, President of GraPat Employers, that Plaintiff be hired. Mr. Bruce accepted this recommendation, and Plaintiff began working as Assistant Manager on May 1, 2004. Ms. Hefner was Plaintiff's immediate supervisor.

In June 2004, due to complications with her pregnancy, Plaintiff was placed on bed rest for one week. Plaintiff informed her employer that she would be taking sick leave for this reason. During her absence, Ms. Cundieff instructed Ms. Hefner to seek applicants for the Assistant Manager position. Upon returning to work, Plaintiff spoke with Mr. Bruce about the job listing.

He assured Plaintiff that she would not be replaced as she had returned to work.[1]

On August 10, 2004, Plaintiff left work at 2:45 p.m. for a doctor's appointment and did not return for the remainder of the day. Ms. Hefer issued Plaintiff a written reprimand on August 11, 2004 for failing to call in and report that she would be absent for the entire afternoon. Plaintiff acknowledges that she should have called in, and signed the reprimand. Subsequently, Plaintiff and Ms. Hefner argued over Plaintiff's absence from work and Ms. Hefner's own alleged absences.

On August 12, 2004, Ms. Hefner issued another written reprimand stating that Plaintiff had failed to complete certain tasks and that Plaintiff had been yelling in the office. Plaintiff contested the reprimand and refused to sign it. Ms. Hefner demanded that Plaintiff go home for the day, and after making a phone call to Ms. Cundieff, Plaintiff complied. On August 13, 2004, Plaintiff submitted a written statement to Ms. Hefner, Ms. Cundieff, and Mr. Bruce in which she admits yelling at Ms. Hefner, but claims that she has been subject to unlawful discrimination. Shortly after receipt of Plaintiff's statement, Mr. Bruce and Ms. Cundieff decided to terminate Plaintiff's employment.

Ms. Cundieff flew to Little Rock, Arkansas from Dallas, Texas on August 17, 2004 to terminate Plaintiff. Ms. Cundieff filled out a Personnel Action Sheet and stated the reason for Plaintiff's dismissal was "personality conflict".

On March 18, 2004, Plaintiff initiated this action against Defendant GraPat Employers,

---

[1] According to Plaintiff's deposition testimony: "[Mr. Bruce] told me that yes, Alisha, we were looking to replace you because we didn't know how long you were going to be out the office and it's a small office here so we need all three of you here at the same time. And you are back now, you're capable of doing your work and Debbi let me know that so we are not looking to replace you anymore." (Plaintiff's Depo. Tr.at 68, Exh. 1 of Dkt. #35). Defendant appears to admit that Mr. Bruce made these statements.

Inc. alleging discriminatory discharge and retaliation in violation of Title VII.

### III.  Summary Judgment Standard

Summary judgment is appropriate only when, in reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, so that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Eighth Circuit set out the burdens of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to demonstrate, i.e., '[to] point[] out to the District Court,' that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.

*Id*. at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)(brackets in original)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . .

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim.  *Id.*

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. Rule 56(e).  The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial.  *Celotex Corp.*, 477 U.S. at 322.

**IV.  Discussion**

"A plaintiff may prove intentional [] discrimination using either direct or indirect (circumstantial) evidence." *Putman v. Unity Health System*, 348 F.3d 732, 734 (8th Cir. 2003). "[I]f a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 997 (2002). "Evidence is 'direct' if it establishes 'a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the employer's decision." *Id.* at 735 (quoting *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir.1997)). Where the plaintiff lacks direct evidence, the plaintiff may present indirect evidence of discrimination

under the familiar *McDonnell Douglas* burden-shifting analysis:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981) (citation omitted). "A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part McDonnell Douglas analysis to get to the jury, regardless of whether his strong evidence is circumstantial." *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004).

Here, there is no direct evidence showing that Defendant terminated Defendant based upon an unconstitutional classification. *Cf. Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 622 (1985) ("In this case there is direct evidence that the method of transfer available to a disqualified captain depends upon his age. Since it allows captains who become disqualified for any reason other than age to 'bump less senior flight engineers, TWA's transfer policy is discriminatory on its face."). The Court must, therefore, consider whether Plaintiff has presented sufficient circumstantial evidence of discrimination under the *McDonnell Douglas* burden-shifting framework.

### *A. Prima Facie Case of Discrimination*

The burden of proving a prima facie case of discrimination is not onerous. *See Burdine*, 450 U.S. at 253. The Plaintiff must establish that: "(1) he or she is a member of a protected class; (2) he or she was meeting the legitimate expectations as to his or her duties; (3) he or she

- 5 -

suffered an adverse employment action; and (4) 'circumstances give rise to an inference of discrimination as similarly situated employees, who were not members of the protected group, were treated differently.'" *Gilooly v. Missouri Dept. of Health and Senior Services*, 421 F.3d 734, 738-39 (8th Cir. 2005) (*quoting Jacob-Mua v. Veneman*, 289 F.3d 517, 521-22 (8th Cir. 2002)).

Plaintiff claims discrimination based upon her race, sex, and pregnant status. Plaintiff argues that Defendant terminated her employment because she is an African-American female who had been experiencing difficulties with her pregnancy which required regular visits with her physician. It appears undisputed that Plaintiff satisfies the first three elements of the prima facie case; however, there is some question whether the circumstances here permit an inference of discrimination. It is clear from the record that: (i) Plaintiff was absent from work for medical reasons related to her pregnancy and Defendant issued written reprimands and attempted to hire a replacement employee; and (ii) Plaintiff was issued reprimands for failing to complete tasks while another, white male employees was not similarly reprimanded. Looking at the facts in a light most favorable to the Plaintiff, the Court will assume, for purposes of this Motion, that Plaintiff has presented sufficient circumstances for a prima facie case of discrimination.

### *B. Defendant's Burden of Proof*

Upon establishing a prima facie case of discrimination, Plaintiff creates a presumption of unlawful discrimination, and the burden then shifts to Defendant to rebut this presumption with evidence showing a legitimate, non-discriminatory reason for the adverse employment action. "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's [termination]. The explanation provided must be legally

sufficient to justify a judgment for the defendant." *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094. "An articulation not admitted into evidence will not suffice. Thus, the defendant cannot meet its burden merely through an answer to the complaint or by argument of counsel." *Id.* fn.9.

Defendant asserts: "Plaintiff's insubordinate behavior towards her supervisor led to a personality conflict between Plaintiff and her supervisor that resulted in Plaintiff's termination." (Brief in Support of Defendant's Motion for Summary Judgment, p. 7, Dkt. #34).As evidence of this "personality conflict", Defendant submitted a copy of the written statement made by Plaintiff on August 13, 2004, in which Plaintiff admits yelling at Ms. Hefner:

> [Debbi Hefner] goes on to tell me that what she does is none of my business. So I tell her "Ok then Debbi what I do is none of your business either." She gets mad cause [sic] I yell back at her and I told her she started yelling first and I am giving her the same respect she is showing me. This continues for a while and I tell Debbi I do not want to talk about it anymore. I return to my office. Debbi writes me up, calls me into her office and I sign the right [sic] up. I know that Debbi only wrote me up because she feels as though I was questioning her authority. I only wanted to talk to her and things should have not escalated.

Plaintiff's statement, Exh. H of Dkt. #34).

Whether Plaintiff's behavior was prompted by Ms. Hefner's conduct, it appears clear that Plaintiff was disruptive at the workplace, and at the very least, was insubordinate in protesting Ms. Hefner's demand that Plaintiff give notification of her absences from work. Terminating Plaintiff for disruptive and insubordinate behavior at the workplace is a legitimate, non-discriminatory reason. *See, e.g.*, *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999) ("Select stated that it terminated Kiel because he insulted Ms. Fry, slammed his desk drawer, and made a sarcastic remark about Ms. Fry in the presence of four co-workers. Our cases have repeatedly held that insubordination and violation of company policy are legitimate reasons for termination."); *see also Miner v. Bi-State Development Agency*, 943 F.2d 912, 913 (8th Cir. 1991) ("Miner's insubordination constituted a nondiscriminatory reason for Bi-State to terminate

his employment."). Accordingly, the Court concludes that Defendant has met its burden of rebutting the presumption of discrimination by articulating a legitimate, non-discriminatory reason for Plaintiff's termination.

### *C. Plaintiff's Burden of Showing Pretext*

The burden now shifts back to the Plaintiff to prove that the proffered reasons for her termination are pretextual. As the United States Supreme Court opined, "a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 2752 (1993) (italics in original).

Plaintiff admits yelling at her supervisor, and Defendant terminated Plaintiff for her "personality conflict" with Ms. Hefner. Based upon Plaintiff's admission to such conduct, it is clear that Plaintiff cannot satisfy the first criteria outlined in *Hicks*--that the reason for her termination was false. Moreover, the Eighth Circuit has held that Title VII generally does not offer protection against "employment decisions based upon poor job performance, erroneous evaluations, *personal conflicts between employees*, or even unsound business practices." *Hill v. St. Louis University*, 123 F.3d 1114, 1120 (8th Cir. 1997) (emphasis added). Accordingly, the Court concludes that Plaintiff cannot meet her burden of showing pretext.

Nonetheless, Plaintiff argues that an inference of discriminatory animus arises here because: (i) "Ms. Hefner would go the extra mile to get [white] tenants qualified, but would not do the same thing for black prospective tenants"; (ii) Ms. Hefner refused to take Plaintiff on marketing trips, opting to take a white employee instead; (iii) Ms. Hefner issued Plaintiff a reprimand for failing to complete tasks when white employees were not reprimanded; (iv) Ms.

Hefner was not terminated while Plaintiff was; and (v) Defendant attempted to replace Plaintiff while she was on sick leave for pregnancy-related medical problems.

The decision to terminate Plaintiff was made by Mr. Bruce and Ms. Cundieff after learning of Ms. Hefner's written reprimands of Plaintiff and after receipt of Plaintiff's statement in response to those reprimands. Ms. Hefner's alleged discrimination against black tenant and black employees does not bear upon the question whether Plaintiff's termination was the product of discriminatory animus. However, the Court will consider the latter two allegations as they relate to Mr. Bruce's or Ms. Cundieff's treatment of Plaintiff.

For their part in the incident on August 12, 2004, Plaintiff was terminated while no action was taken against Ms. Hefner. Such disparity in treatment may create an inference of discrimination if the two employees are "similarly situated". *See*, *e.g.*, *Ward v. Procter & Gamble Paper Products Co.*, 111 F.3d 558, 560 (8th Cir. 1997) ("Nevertheless, Ward argues that her striking of Heise was merely a pretext for discrimination because Heise, a white employee, was disciplined less severely for her involvement in the incident. Instances of disparate treatment can support a claim of pretext, but Ward must prove that she and Heise were similarly situated in all relevant respects."). Here, it is clear that Plaintiff and Ms. Hefner are not "similarly situated employees". Plaintiff and Ms. Hefner may have shared some similar work duties, but Ms. Hefner, as Plaintiff's supervisor, had more extensive responsibilities and a longer record of employment. Moreover, Plaintiff's outburst occurred only three months into her employment with Defendant. *See Ward*, 111 F.3d at 561 ("Furthermore, our finding that Ward and Heise were not similarly situated is bolstered by the fact that they did not hold the same position and they did not share similar employment records. Ward held the position of technician, whereas Heise was a team leader. Although they may have shared some common job duties, Heise's duties were more

extensive. Furthermore, in contrast to Ward's record of disciplinary problems, no evidence was presented that Heise had anything but a spotless disciplinary record.").

With respect to Defendant's attempt to replace Plaintiff while she was on sick leave, Plaintiff's own testimony explains why Defendant sought applicants for Plaintiff's position:

> [Mr. Bruce] told me that yes, Alisha, we were looking to replace you because we didn't know how long you were going to be out the office and it's a small office here so we need all three of you here at the same time. And you are back now, you're capable of doing your work and Debbi let me know that so we are not looking to replace you anymore.

(Plaintiff's Depo. Tr.at 68, Exh. 1 of Dkt. #35). The Court notes that Plaintiff suffered no adverse employment action here, and Plaintiff presents no evidence linking this incident to her later termination. Accordingly, the Court concludes that even if Plaintiff could prove the offered reason for her termination was false, which she cannot, Plaintiff has failed to present evidence indicating that discrimination was the actual reason she was fired.

### *D. Discriminatory Retaliation*

Plaintiff argues that she was fired in retaliation for complaining of discrimination in her August 13, 2004 statement addressed to Ms. Hefner, Ms. Cundieff, and Mr. Bruce. "'To establish a prima facie case of Title VII retaliation, [the plaintiff] must show: (1) she engaged in activity protected by Title VII; (2) she suffered an adverse employment action; and (3) a causal connection [existed] between her protected activity and the adverse employment action.'" *Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 684 (8th Cir. 2001) (*quoting Bogren v. Minnesota*, 236 F.3d 399, 407 (8th Cir. 2000)). "Adverse employment actions must have a 'materially adverse impact' on the plaintiff's terms or conditions of employment under Title VII." *Sowell*, 51 F.3d at 684.

- 10 -

It is clear that Plaintiff satisfies the first two elements of a retaliation claim, but Plaintiff fails to articulate a causal link between her protected activity and her termination. As the Eighth Circuit has held, "Although contesting an unlawful employment practice is protected conduct, the anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999). Plaintiff's outburst and conflict with her supervisor was disruptive of the workplace, and the Court concludes that Defendant's termination of Plaintiff for those reasons does not constitute discriminatory retaliation.

IT IS THEREFORE ORDERED that the Motion for Summary Judgment filed by Defendant Grapat Management (Dkt. #33) shall be, and it is hereby, GRANTED.

Dated this  16th  day of June, 2006.

                  /s/Garnett Thomas Eisele  
                UNITED STATES DISTRICT JUDGE